My name is Stephen Kim and I represent the appellant in this case. Three years ago today, the Child Welfare Service, formerly called CPS, took away my client's children under a determination that the CPS worker, who was the defendant in this case, believed the children were in danger of being harmed. Under state law, once children are removed from a family, the state needs to do one of three things. Within three days, they need to file a petition in the court seeking to retain custody of the children. Two, they need to just return the children. Or three, they need to obtain the consent of the child's legal custodian to the continued custody in the Department of Human Services, or CPS. There is no question in this case that at the time CPS entered my client's life and removed her children from her, that her interest in having custody of her children was a clearly established right. There are two cases, actually it's one case, two opinions, arising out of this district construing this identical statute saying that a delay on the part of the Child Protective Service of even filing a petition for seven days, instead of at that time it was two, has now been extended to three days, is a violation of the parent's liberty interest constitutionally protected. And that case is Campbell v. Burke. It was affirmed by the Ninth Circuit Court of Appeals. In the Campbell v. Burke case, the court did determine that as of the date of the removal in that case, that CPS worker could not have known that it would be determined that it was going to be a violation of a clearly established constitutional right. However, since Campbell v. Burke, I don't think anybody can make any legitimate argument that it was not established from that date. But the main problem would appear to be with Caldwell v. McPherson. Correct, Your Honor. And doesn't that case say that it is not a constitutional violation or a violation of due process to place the child with the other parent? Caldwell v. Lefebvre, Your Honors, was a case in which the children were removed from a parent in Montana and immediately put on a bus to Washington. What the court in the Caldwell v. Lefebvre Why does that make a difference? What the issue was, was whether or not the CPS worker in that case or the state worker in that case was under a reasonable belief that her actions were legal. They had a different statute. Their statute provided that you need to give 48 hours notice for a hearing or the state needs to make arrangements with the parents that are satisfactory to the state. The determination in that case was that you cannot expect a CPS worker or a state worker to be held accountable to later on to determine whether it's one parent or two parents whose consent was required. Well, but it's more than that. It's that a court said that an interpretation of the statute that says that you can take it from one parent and give it to the other, that doesn't violate due process. What the court said is that the interpretation of the statute cannot be determined implausible on its face. No, I'm not talking about that. I'm saying for the reasons we have outlined, such an interpretation does not establish any conflict between the statute and the requirements of due process, meaning a statute that provides that you can take the child from one parent suspected of abusing it or committing abuse and give it to the other parent does not raise a due process question. Now, right or wrong, I'm saying, doesn't that mean that if the social worker believes that it's permitted to give it to the other parent, that that's not a constitutional violation? It depends, Your Honor, on whether the belief of the social worker is an objectively reasonable belief. And in the Caldwell LeFevre case, Your Honor, as the court has pointed out, what the court had said is based on this statute that was in front of it, we can't say whether the social worker should have known one way or the other. Our situation is significantly different, Your Honor, because ours doesn't talk about getting the consent of or the agreement or the arraignment satisfactory to the parents. Let's say that it was either unclear or clear that under the State procedure, the social worker was allowed to take it from the mother and give it to the father, the child. That would not be a constitutional violation if the State permitted that. If our State, if our statute permitted that? Yes. Your Honor, I do believe that a statute that permitted that the State can come in and remove custody from one and place custody with another without any provision whatsoever for a hearing would violate due process. And, you know, in the Caldwell v. LeFevre case, the court did make clear that really the issue here isn't whether or not the parent's going to have a hearing. The issue here is whether the hearing would be in Montana or in Washington, and the court determined that, hey, it's okay that in this case, this child was moved to Washington because the parent would have an opportunity to be heard in front of the court that had actually decided the decree. Well, what the court said is when children are placed with a parent with legal custody, that's one of the two parents, defendants assert there is no need to file a petition because arrangements have been made with the parent as contemplated under subsection 3. Exactly. All right. So that a State that says that you can take it from one parent to the other is not violating the due process clause. Okay. What the court had just read, when children are placed with a parent with legal custody, there is no need to file a petition if arrangements have been made with a parent. That was the assertion of the defendant. That was not the court's holding. That was the assertion of the defendant, which the court then goes on to then say. And then the court says that's a plausible interpretation. That's right. Of the statute. And then if that is the interpretation, it doesn't violate due process. Under this reading of the social worker's construction of this language, which talked about making arrangements satisfactory with a parent, what would have been reasonable for this social worker to do? And here in our case, Your Honor, where we have a statute that talks about achieving an agreement with a legal custodian and where the State has in its possession at that moment the divorce decree, which determines that that person that they dealt with, the father, is not the legal custodian for purposes of making this decision. No, but they are. He is a legal custodian. He doesn't have physical custody, but they jointly have legal custody. Your Honor, the joint legal custody in this case was not an equal legal custody. Your Honor, it provided that this parent who gave the consent was not entitled to make any major decisions for the child without the other parent's consensus. It did provide that the other parent, who is the appellant in this case, could make unilateral decisions for the children that were major for the children. It did not provide that the parent that the State went to could make unilateral decisions. In fact, it specifically provided that that parent could not. So our contention- Right, except the district court interpreted the Hawaii statutes to allow the parents and the father in this situation to make those decisions. I mean, I guess to cut to the chase of this, this seems to require some nuanced interpretation of law. The district court interpreted it in a way that was unfavorable to your clients. Regardless of how that comes out, why isn't qualified immunity appropriate when the law is unclear? Your Honor, I believe the law requiring a hearing is clear. The issue is whether or not the actor's conduct in this case was reasonable, whether they could have reasonably believed that their conduct was legal. And the reason that I believe that no reasonable jury could even determine that this was reasonable conduct is because this State actor, the defendant, was told to do a number of things. First of all, she concedes that she was aware of a problem in the decree that might mean that she would need my client's or the appellant's consent. That's why she raised the question in the first place. Second, she concedes that she was instructed to go talk to the Department of Attorney Generals and see what they would say about this. She has tried to finesse this in an affidavit by saying, our office received information that it was not necessary. But when pressed in her deposition, she says, well, I never spoke to anybody. And when further pressed, she was told, well, I think my supervisor was told, but my supervisor never told me that I didn't need to get your client's consent. So when pressed, the issue of whether my client's consent could be dispensed with, she has tried to finesse that in her affidavit, but she clearly states that I was never told that your client's consent was unnecessary. Okay? Consent to what? The issue was whether or not at the time, they were still within three days, whether or not they were going to proceed with this continued retention of the children by a voluntary agreement to place the children in foster custody, which would have made it a consent case. They would not have had to file a petition to obtain jurisdiction over the children because the legal custodians had consented. Okay. She had an issue in her mind as to whether or not consent was required. She was told to go talk to the Attorney General. She did not. Then states that she was not ever told that my client's consent was unnecessary. And then to top it off, Your Honor, after she had taken the children. Wait, wait. Did they place the children in custody of a third party? I beg your pardon, Your Honor? Did they place the children in custody of a third party? They did, but the third party was the other parent, the divorced parent. That's not a third party. That's a second party. All right. So, because I thought when you were saying that within three days they had to do before placing them in foster care, you were talking about some non-parent, but you're talking about giving the child to the father, the other legal custodian. Your Honor, under our statute, even taking the children from my client and placing the children with the other parent who is not the physical custodian is a temporary foster custody. The record has in it an agreement between the Department of Human Services and the father, which was a foster custody agreement. So the relationship here that was arranged was a foster custody arrangement. I did want to point out in further response to the question concerning reasonableness, after she had accomplished all of this and claims that she was persuaded that consent of both legal custodians was unnecessary, she placed a telephone call to my client, which appears in the record. Your Honor, we have put the cassette in the record and we have put the transcript in the record, in which she calls my client after she's made this determination and says, I would like you to come into my office by November 8th, which would have been the third business day, and I would like you to talk about signing a consent so we can proceed. It's quite clear that the social worker was, let's say, a novice and not fully familiar with all of the rules, whether there's a constitutional violation is another question, but we're way over your time and I want to give you a minute or two for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, my name is Dorothy Sellers. I'm here this morning with Kimberly Simodo on behalf of Luana Canela. She is the appellee and she is the social worker for the State of Hawaii. There's no question in this case, Your Honor, that these three abused children were rightfully removed from an abusive environment. We're here today on a constitutional claim under Section 1983. The two points that I'd like to make this morning with the Court are, first, no constitutional right was violated, and second, any social worker, including the appellee here, reasonably would have believed that her actions were legal in light of clearly established law, and by that I mean the Caldwell case as subsequently confirmed by the Campbell case and in light of the information possessed at the time, which was the advice from the Attorney General's office. Let me start, then, with the... Look, could I just ask you one problem that we didn't discuss with the plaintiffs? And that's the issue of changing the child's school. The record appears to show that the Department agrees that it had no authority to do that, that only the parent could do it, and the Department says it's the parent who did it, the father. The father files an affidavit saying that, yes, he did it, but then testifies or previously testified at the due process hearing that he had nothing to do with the decision, that it was the Department. Now, if the Department acknowledges that that would have been a violation and the father's testimony is first, it was the Department that did it, I have nothing to do with it, and says it very clearly, and then files a conflicting affidavit, doesn't that raise an issue of fact? Your Honor, ordinarily, if his testimony at the DOE hearing were admissible and authenticated, yes, it would raise a question of fact. Okay. Now, before we get to admissible and authenticated, if it does raise an issue of fact, and let's assume you lose on admissible and authenticated, do we then remand for further proceedings? Do we just reverse summary judgment to that extent, or what? Well, I haven't given up on the admissibility. No, no, we're going to come back to that. Then I think, yes, at that point, because there would be conflicting facts that you can't weigh, that on that one issue there could be a remand, although, Your Honor, even then you would have to come to the conclusion that this is a major decision. Well, it would seem to be a major... Since the divorce decree didn't... There was a child who was in a special... The child with disabilities was in a special private school, and he was taken out and put into a public school. Wouldn't you say that's a major decision? I don't know that it was, because the private school was no better, and, in fact, worse for the child than... Well, even if it's a good decision, it's a major decision. I don't know. And it had been a decision that had gone back and forth several times. Before you leave that point, though, of what impact was the foster care agreement at this point? Because it seems to me that the relationship is a little bit odd in this case, because the third-party parent is actually a second-party parent. But let's assume that he's a hypothetical set of facts. Let's say that the children are in foster care. Who has the right under that situation to make educational decisions? Well, at this point, because they're in his foster care, he is in charge of those children. He has sole physical custody, and he still has the joint legal custody. Let's understand that, but the foster care arrangement, under a consensual situation where a parent gives up rights, the state is given the right to make educational decisions under the consent agreement, right? That's what it says in the consent agreement. So the father consented for the state to make that decision. Now, right? Well, if that's what the agreement says, I can't recall that exact language. Well, that's what's confusing me. Because the consent agreement seems to say that whether it's effective or not is a whole other question, but the consent agreement, voluntary foster care agreement signed by the father, says that he agrees to permit the department to provide all, he's permitting the department to provide all consents which are required for my child's physical and psychological health and welfare, including medical, dental, psychiatric, psychological, educational. So he's consenting for the department to make those decisions. Now, the department then places the child's foster care back with the parent, but I don't understand how that works under Hawaii law as to the department's ability to consent. You seem to concede the fact that the department has no authority. The document seems to give some authority to the department to make decisions. Where are you? It's clear that the document does, and I'm sorry I did not previously refer to the court's attention. It's not a question of bringing it to the court's attention. The position of the department has been very clearly that it does not have the authority to do it. It seems it's a little late to change that position. Well, the position of the department has consistently been that in this particular case we did not make that decision. Well, hasn't it also been that you didn't have the authority to do it? I believe that has been our position. I understand that's your position. I'm trying to understand how did this work, because it seems to me that you did have the authority and you say you don't. Well, in a special needs child, I'm not sure what the Department of Human Services would claim. And, in fact, we didn't claim it here. But in light of this line of questioning, we need to go back and talk about authentication. You want to go back to admissibility and authenticity? Yes, indeed. And this is what I want to tell the court. Clearly, that one piece of evidence that indicates that the department made the decision was not properly authenticated, and there's no dispute about that. Right. I understand your argument, but at the end of the day, if this were amended, the fact is it would not be very difficult to authenticate that testimony, right? Yes. But if the court reads that particular transcript, the court will also note that the father's testimony in that regard was both ambiguous and lacking personal knowledge, and that he really didn't know. He believed the department may have done something, but it is not. Well, he knew that he didn't make the decision. That's very impersonal knowledge, isn't it? Yes. No. He didn't have personal knowledge that he didn't make the decision? He didn't have personal knowledge that the department had made the decision, which is right. Well, he had personal knowledge that someone other than he made the decision. Question. And did that occur by your sole decision, or was it DHS? How did that occur? Answer. That was a DHS decision. But he doesn't have any firsthand knowledge of that. But he certainly wouldn't doubt about it. The problem is he's not in doubt about it. He has personal knowledge about who made the decision, and he says it's DHS. It may be that somebody else made it, but he knows whether he made it, and that's the key issue. Then he says, I believe the investigator made it. Right, but what he's saying is, I didn't make it. He said it was a DHS decision, and he believes that the person in DHS who did it was the investigator. Now, that he doesn't know, but he certainly knew that he didn't. And either he did or the DHS did. Well, it's not clear who did. How do we resolve that in terms of he files a subsequent affidavit, and normally on the evidentiary rules the affidavit would be insufficient to overcome sworn testimony. Now, here you have the anomaly that they didn't get it authenticated, and you have a point. But as we sit here today, it would seem to be that certainly it's no great challenge to authenticate the transcript, and it does present a tribal issue. Well, on that particular issue, we do have an idea. But I don't know that in the Orr case, for example, the court sent it back and said, well, all this authentication is so easy, take another shot at it, because that's not fair to the district court judge who can only rule on a case in light of what's in front of her. It's like you don't get countless chances to put together your case for summary judgment. It's now or never. And if it goes up on appeal and the error is that you made is I failed to authenticate, it's not really, with all respect to this court, it's not really that you want to give a second chance. No, but that's what I was getting to in sort of an awkward way, is that usually we get the challenge when you get an affidavit like the one that's put into this case, that you can't impeach your prior testimony, and therefore the affidavit would be stricken because it's incompetent to impeach your prior testimony under oath. So it seems we were sort of presented with less than a perfect evidentiary situation. Well, that's true, and it's confusing. Because it's your burden on summary judgment, and you're relying on an affidavit that apparently impeaches the prior testimony that's unauthenticated. But I think the point, Judge Thomas, is that we have two other affidavits that are not impeached that say clearly from Canella and from Watnabe, their supervisor, that say clearly we never made this decision. We never took that child out of the school. That's not our job. And so even if the Brian Shiraki affidavit is inconsistent with his prior testimony, there are two other affidavits that make the same point of view. So that's not the problem. I seem to be running out of time here. If there's anything else in particular you'd like to cover, do it briefly. I would like to say that as long as the Caldwell case is on the books, and it is, and it was confirmed by the Campbell case, that putting the child in custody of another custodial parent does not rise to the level of a constitutional violation. The social worker in this case fully complied with the Hawaii statute, which lays out the three options of what to do when you take the child into temporary foster custody. And I think what we need to focus on a little bit is why we have qualified immunity for government employees in the first place, which part of it is we don't want social workers, lawyers, bogged down in their jobs with discovery trials, concerned about liability. And particularly in the case of a social worker, any government official who has any kind of discretion, we want that person, we don't want that person to say, I'm sorry these children are being abused, but I don't do anything about it because I'm afraid of being sued. This is a qualified immunity case. I assume the state pays for the social worker's damages. I hope so, yes. So I don't think the social worker would be all that afraid of being sued, as long as you have a good, responsible state like Hawaii. It's done on a case-by-case basis. But before you escape so easily, let me ask you one other question. Your arguments about authenticity in Hearsay, were they raised to the district court? No, sir, we moved to strike that second. But not on those grounds. Not on those grounds. So it wouldn't be fair to the district court if we were to rely on that when the district court didn't have an opportunity to consider it. No, because... I mean, we do want to defend the district court. The court can affirm on any ground that's supported by the record. But we didn't give the district court a chance to consider that. And would it be fair to affirm them on that ground? Yes, because they are in the record, and of course you can. Thank you. Okay, thank you. Counsel? Your Honor, just briefly, on the court's last comment, the issue of authenticity was not raised. It's absolutely waived. It was not preserved at any time, Your Honor. And it was not even mentioned as a point on cross-appeal, Your Honor. The first time it appears is in the answering brief. Your Honor, in answer to one of the other points that the court had raised, the court is absolutely correct in 5F3-1255, the school district case, that it is entirely proper for the court to exclude affidavits that conflict with prior testimony given under oath, whether or not the issue... Did you ask the district court to do that? Oh, yes, Your Honor, we did. And the district court ruled against you? The court, as far as I can tell, admitted everything. They excluded nothing. But we did point out the issue of, hey, this guy's affidavit now conflicts with his prior testimony. And that's what led to a motion to strike the prior testimony that he'd given. Thank you, counsel. Thank you. Thank you both very much. The case just argued will be submitted. The next case on the calendar is Gannott v. Ashcroft. Counsel. Thank you, Your Honor. May it please the court, my name is David McCauley, and I represent the petitioner, Mr. Alejo Gannott. One issue that is raised in our pleadings has been addressed, although not in published decisions already in previous cases, concerning members of the Marcos entourage who came in with Mr. Gannott. Do you know you're not allowed to cite unpublished dispositions as precedent? No, I'm certainly not doing that. What I'm saying is that we're not going to – I'm not going to press argument on the issue of whether Mr. Gannott
judges: Browning, Reinhardt, Thomas